**FULK & NEEDHAM, INC., Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 12975.

United States Court of Appeals
Fourth Circuit.

Argued May 7, 1969.

Decided June 9, 1969.

———◆———

Murray C. Greason, Jr., and Leon L. Rice, Jr., Winston-Salem, N. C. (Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on the brief), for appellant.

Howard M. Koff, Atty., Department of Justice (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attys., Department of Justice, and William H. Murdock, U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

The single question raised in this action for refund of corporate income taxes is whether the appellant-taxpayer, Fulk & Needham, Inc., was eligible for treatment as a small business corporation under subchapter S of the Internal Revenue Code during the years 1960, 1961 and 1962. In order to obtain subchapter S treatment, a corporation must make a valid election to have its income taxed directly to its shareholders.[1] In this case appellant made an election in November, 1958, which, if valid, would be effective for the calendar year 1959 and succeeding years, thus entitling the taxpayer to the refund sought.

For an election to be valid the electing corporation must satisfy the specific eligibility requirements set out in 26 U.S.C. § 1371(a):

> (a) Small business corporation.— For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—
>
> (1) have more than 10 shareholders;
>
> (2) have as a shareholder a person (other than an estate) who is not an individual;
>
> (3) have a nonresident alien as a shareholder; and
>
> (4) have more than one class of stock.

The Commissioner's position, upheld by the District Court, is that Fulk & Needham's election was invalid because certain of its shares were held in *trust,* and therefore not all were owned by *individuals* or *estates* as § (a) (2) requires. We too find that the conditions laid down in § (a) (2) were not met and therefore affirm the District Court's denial of the refund.

The material facts are these: On July 14, 1954, A. P. Fulk, a partner with a one-half interest in the construction firm of Fulk & Needham, died testate. Under the Will his estate passed to a trust wherein his wife was designated life beneficiary. The Will provided that at the wife's death the trust should terminate and the testator's two daughters should take the trust property in fee. Fulk's wife and daughters were named co-executrices of his estate and co-trustees of the trust. The estate consisted in large part of his interest in Fulk & Needham.

Five months after Fulk's death, the partnership was incorporated as Fulk & Needham, Inc. The ownership of the new corporation was divided evenly between the Fulks and the Needhams. Each family transferred its partnership assets to the corporation in return for an ownership interest therein. No stock certificates were ever issued, but the corporation's minutes include a direction to issue 545 shares to the trustees of the A. P. Fulk Estate. The following year the estate was closed, and the widow and daughters signed as co-trustees a document acknowledging receipt of the estate assets from themselves as co-executrices.

The present appeal turns upon the ownership of the 545 shares in question. If they were held in trust, rather than by an individual or estate, then the 1958

---

1. Current operating losses are similarly passed on to the shareholders, in the same manner as losses in a proprietorship. The House Committee of Finance observed that subchapter S is of "substantial benefit to small corporations realizing losses for a period of years where there is no way of offsetting these losses against taxable income at the corporate level, but the shareholders involved have other income which can be offset against these losses." H.R. 775, S.R. 1983, Conf. R. 2632, Technical Amendments Act of 1958, P.C. 85–866, 85th Cong., 2d Sess., U.S.Code Cong. & Adm.News, Vol. 3, pp. 4791, 4876 (1958).

Another obvious benefit of subchapter S treatment is the avoidance of a double tax on amounts distributed to shareholders which would otherwise be dividends and taxed to both the corporation and the shareholder.

election was invalid as the Commissioner determined and the refund was properly denied.

The corporate taxpayer concedes that the Will created a trust and that the corporation's records contain evidence that the shares were to be issued to Fulk's widow and daughters as trustees. The contention made, however, is that the trust should be disregarded as lacking economic reality.[2] Appellant's argument is predicated upon the fact that Fulk's widow had, without objection from her daughters, treated the 545 shares as her own property ever since the corporation was formed. She was accepted by the corporate management as the representative and authoritative spokesman of the Fulk interests, and in her income tax returns reported not only the distributed but also the undistributed income of Fulk & Needham, Inc. attributable to the 545 shares. No fiduciary returns were ever filed, but neither was any gift of the remainder interests from the daughters to the mother reported or any gift tax paid thereon. It is conceded that no element of tax avoidance is present. The enumerated circumstances have led appellant to the conclusion that the widow, not the trust intended by Fulk, owns the shares. Thus it is reasoned that § 1371 (a) (2) has been satisfied and consequently the election of subchapter S treatment is valid.

Appellant's contention must be rejected. We do not agree with the taxpayer that in the particular circumstances of this case, the Internal Revenue Service's and later the District Court's recognition of the trust as owner of the shares exalts form over substance. To the contrary, it seems to us that adoption of the taxpayer's theory would have that very effect. The events stressed by appellant furnish no ground for disregarding the trust created by the Will.

The objective fact is that under the trust, Fulk's widow was entitled to a life interest in her husband's property, and this is precisely what she has received. The fact that she alone among the trustees represented the Fulk interests in running the corporate business is entirely consistent with the existence of a trust. Under North Carolina law, the vote of one trustee ordinarily is the act of all the trustees where the trust owns shares of corporate stock.[3] There is no evidence that Mrs. Fulk appropriated the corpus of the trust to her own use, or otherwise acted in a manner at odds with the continued existence of the remainderman's rights under the testamentary trust. The trust's interest in Fulk & Needham has not been invaded by the life tenant, remains entirely intact, and will be available to the life tenant's daughters at her death, all in strict accordance with the direction in Mr. Fulk's Will. Unquestionably, the daughters, at the termination of their mother's life estate, will not inherit from her, but will take under their father's Will.

It is of some importance to note that we are dealing here with a family situation in which the same persons were named co-executrices, co-trustees, and beneficiaries. It may be assumed that informal administration was contemplated. However, we perceive no reason to disregard the trust merely because it

2. Before the District Court the taxpayer contended alternatively "(i) that at the time of the subchapter S election and during the taxable years in suit, no trust existed under the laws of North Carolina, and (ii) that even if a technical trust existed under state law, it was not a trust in substance which should be recognized for purposes of federal income taxation." On this appeal appellant has abandoned (i).

3. § 55–69 Gen.Stat. of N.C. provides in pertinent part:

"* * * [I]f two or more persons shall have the same fiduciary relationship respecting the same shares, then unless the instrument or order appointing them or creating the tenancy otherwise directs and it or a copy thereof is filed with the secretary of the corporation, their acts with respect to voting shall have the following effect:
(1) If only one votes, in person or by proxy, his act binds all;
* * *."

was administered loosely, yet in a manner not diverging from the trust provisions.

■ It is true that Mrs. Fulk did not always consult with her daughters in matters affecting the business in which the trust held stock. Nevertheless, the fact that the daughters were inactive trustees and were content to allow the co-trustee, their mother, to exercise trustees' prerogatives does not obliterate the trust. Especially is this so since it is conceded that no action taken by the mother conflicted with her prescribed duties as trustee. If she had obtained a formal power of attorney authorizing her to act for her co-trustee daughters, the taxpayer would hardly be before this court urging that the trust is a nullity. To ignore the trust because the daughters executed no formal document acquiescing in the activity of their mother as co-trustee—activity entirely in line with the trust's provisions—would be to insist on form at the expense of substance. We decline to sanction this approach.

■ It is clear that in enacting subchapter S "[t]he intention of Congress was to permit small businesses to select the form of organization desired, without the necessity of taking into account major differences in tax consequences." A & N Furniture & Appliance Co. v. United States, 271 F.Supp. 40, 42 (S.D. Ohio 1967). Under this legislation, as above noted, the income of the corporation is not taxed to the corporation, but is treated as income to the shareholders. This benefit, however, was not granted without limitation. Congress explicitly set out a number of prerequisites to qualification, and these are contained in § 1371(a). In A & N Furniture & Appliance Co. v. United States, *supra* at 43 the court discussed the reasons that moved Congress to prescribe the limitations in § 1371(a):

"There were two reasons for limiting the right to elect under subchapter S to small business corporations. First, it was thought that only relatively small corporations were essentially comparable to the partnership or proprietorship, where earnings are taxed to owners rather than to the business organization. Thus the restrictions as to the amount of shareholders and to shareholders who are individuals only. Secondly, it was thought that the complexity involved in passing the earnings of a corporation through to its shareholders, where the stock of the corporation is held by a widely diversified group of shareholders, created accounting complications which were too great a burden for the government to bear, and thus the restriction as to one class of stock."

■ The formula employed by Congress in § 1371(a) (2) in defining a small business corporation entitled to the benefits of subchapter S, speaks of a domestic corporation which does not have as a shareholder "a person (other than an estate) who is not an individual." By necessary implication a corporation in which a trust is a shareholder does not qualify.

In Old Virginia Brick Co. v. Commissioner of Internal Revenue, 367 F.2d 276 (4 Cir. 1966), we were also called upon to determine whether certain shares in the electing corporation were owned by a trust, thus disqualifying the corporation. In that case, some of the corporation's shares were retained in the name of the estate of a person who had died more than 20 years before the tax years in question. Although the estate had never been formally closed, we observed that the period of administration had long passed. We upheld the Commissioner's contention that the estate phase had terminated and that despite the persistent use of the estate form, in reality the ownership of the shares resided in a testamentary trust, thus disqualifying the corporation from subchapter S treatment.

■ *Old Virginia Brick* demonstrates that the substance of the matter governs in testing the eligibility of a corporation

making a subchapter S election. The same principle is applicable in the present case. Here, as in *Old Virginia Brick*, recognition must be given to the realities. There we gave effect to the fact that the estate had been converted into a testamentary trust although the parties continued to call it an estate. Here effect is to be given to the fact that the testamentary trust was never terminated or abandoned and the trust provisions have not been contravened. The parties made no specific acknowledgment of the trust—perhaps only because they had no occasion to choose between acting in accordance with the directions of the trust and acting in some inconsistent manner—but neither did they repudiate the trust or deviate from its commands. The trust remains unimpaired in substance.[4]

■ Our conclusion is that the trust created in A. P. Fulk's Will has continuously been a shareholder in the taxpayer corporation. Consequently, the election under subchapter S was invalid, and the judgment of the District Court denying the refund is

Affirmed.

4. Appellant draws into question the validity of Treasury Regulation § 1.1371–1(a)(2) promulgated to implement § 1371(a)(2) of the statute. The Regulation purports broadly to disqualify any corporation in which a formal trust is a shareholder, regardless of the substance or nature of the trust. In particular, it provides that a corporation in which a voting trust or "Clifford" trust is a shareholder does not qualify under subchapter S. Taxpayer points out that the Regulation was in part invalidated in A & N Furniture Co. v. United States, 271 F.Supp. 40 (S.D. Ohio 1967) where the court held that a voting trust did not disqualify the electing corporation.

The portion of the Regulation condemned in that case may well be open to challenge as conflicting with the principle of substance over form. Likewise, the portion of the Regulation which undertakes to disqualify a Clifford trust (where the form of a trust is employed but the grantor retains control and is taxed as the true owner) may be open to attack. However, the trust in this case is neither a voting trust nor a Clifford trust; it is instead a traditional testamentary trust possessing economic substance and conferring full powers and title upon the trustees. The defect in the Regulation, if there is one, does not come into play in the present case.