**Marie L. DeTREVILLE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 67–277.**

United States District Court
D. South Carolina,
Columbia Division.

Dec. 10, 1969.

As Amended June 6, 1970.

Gene V. Pruet, Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Myron C. Baum, Chief, Refund Trial Section No. 2, Department of Justice, F. DeGraffenried, Attorney, Department of Justice, Washington, D. C., Joseph O. Rogers, Jr., U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

DONALD RUSSELL, District Judge.

This is a suit for the refund of income taxes in the amount of $9,862.47 alleged to have been erroneously assessed and collected for the year 1960, plus interest.

On the basis of the testimony taken on trial before me, admissions of the parties and answers to interrogatories, I make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Forest Land Company, Inc. (hereinafter called Corporation) is a corporation organized in 1931 under the laws of South Carolina, with a capitalization of 100 shares. Its stockholders were all relatives, members of a common family group. At the end of 1958, it had accumulated surplus, represented largely in real estate holdings, of approximately $500,000.00.

2. By proper and timely resolution of its shareholders, the Corporation elected at the end of the calendar year 1958 to qualify as a "small business corporation" under Subchapter "S", Internal Revenue Code of 1954, Sections 1371–1378, 26 U.S.C. By such election and

qualification, the Corporation acquired thereupon, for tax purposes, substantially the character of a partnership.[1] It thus ceased as a corporation to pay federal income taxes and its individual stockholders individually became liable, as if they were partners, for taxes due on all income of the Corporation, whether distributed or not, proportioned to their stock ownership.[2] Moreover, the Corporation became entitled to distribute thereafter, in accordance with regulations prescribed by the Secretary or his delegate, to any stockholder all or any portion of the shareholder's net share of the Corporation's undistributed (but previously taxed) income without payment again of tax thereon.[3]

3. The taxable income of the Corporation in the calendar year 1959 was $128,956.24, of which $888.70 was distributed proportionately among the stockholders, leaving $128,067.54 as undistributed taxable income on which the individual stockholders paid their proportionate tax as provided in Subchapter "S". In 1960, such taxable income, taxed to the individual stockholders, aggregated $158,183.84 of which $73,382.74 was distributed to stockholders. Thus, as of December 31, 1960, there was in the Corporation previously taxed but undistributed taxable income, as defined in Subchapter "S", for the years 1959 and 1960, in the amount of $212,868.64.

4. On December 16, 1960, the stockholders of the Corporation and other related entities, formed a new corporation to engage in the insurance business under the corporate name of Mount Vernon Life Insurance Company (hereinafter called "Insurance Company"). The Corporation subscribed to 13,756 shares of the capital stock of the Insurance Company, payable by transfer of certain real estate owned by the former. The value of the stock of the Insurance Company, so authorized and for which the Corpora-

1. Sections 1373–4, 26 U.S.C.; Fulk & Needham, Inc. v. United States (4 Cir., 1969) 411 F.2d 1403, 1406.

2. See A. & N. Furniture & Appliance Company v. United States (D.C.Ohio, 1967) 271 F.Supp. 40, 42–43.

3. Section 1375(d) (1), 26 U.S.C.

tion subscribed, was fixed at $22.50 per share. In subscribing for such capital stock of the Insurance Company, the Corporation executed two stock subscriptions. The first, for 10,866 shares, was to be paid by the transfer of property having a book value and tax basis on the books of the Corporation of $244,472.21. The value of the property so transferred, when divided into the number of shares of Insurance Company stock to be paid for by such transfer, translated into a purchase price of roughly $22.50 per share. The stock covered by the second subscription for 2,890 shares, on the other hand, was to be paid for by the transfer of property which had no book value or tax basis on the books of the Corporation.

5. It was the intention of the Corporation and its stockholders at this point to distribute from the stock of the Insurance Company as represented by the certificate for 10,866 shares, certain stock in such Company, for which a price of $22.50, it was claimed, was to be paid in property, among the stockholders in such number of shares, as, when calculated at $22.50 per share, would roughly equal their proportionate share of the previously taxed but undistributed income of the Corporation for the years 1959 and 1960. This, of course, would have given no cost basis for the stock covered by the other subscription, but the Corporation intended to retain this stock and to treat it as a non-taxable item.

6. Subsequently, the officers of the Corporation ascertained from their accountant that the Treasury Department had issued a ruling under Subchapter "S", to the effect that only distributions in cash, as distinguished from property, of previously taxed but undistributed profits, could qualify as non-taxable distribution to stockholders thereunder, and specifically, that distributions made in the form of property would not qualify and would be again taxable in the hands of the individual stockholders. They accordingly determined to make what they deemed a cash distribution as of December 31, 1960, to stockholders of the Corporation in an amount equal roughly to the purchase price (calculated at $22.-50 per share) of Insurance Company stock which they had previously proposed to distribute among the individual stockholders as their proportionate share of the previously taxed but undistributed income of the Corporation as of that date. To accomplish this purpose, the Corporation issued on December 31, 1960, its checks to the various stockholders in an amount equal roughly to the purchase price of the Insurance Company shares to be received by the particular stockholder as his or her proportionate share of the Corporation's undistributed but previously taxed income for the years 1959 and 1960. At the time these checks, aggregating in amount $212,868.64, were issued, the bank balance of the Corporation was a mere $4,209.56. None of these checks, however, were deposited by the stockholders until January 5 or 6, 1961. On these dates, the several stockholders purchased from the Corporation such amount of Insurance Company stock, valued at $22.50 per share, as would substantially equal their cash distribution as represented in the check received by them on December 31, 1960, giving their check to the Corporation in approximately the same amount as that represented by the check received by them from the Corporation on December 31, 1960. The stockholders and the Corporation thereupon deposited practically contemporaneously their respective checks as received by them in connection with the above transaction. The several checks then balanced out. The way this operated is illustrated by the manner in which the plaintiff paid for her stock. On December 31, 1960, the plaintiff received a check for $17,631.34. On January 6, 1961, plaintiff gave her check to the Corporation for $17,640 in purchase of 784 shares of the Insurance Company stock at a price of $22.50 per share. Both of these checks, though issued on different days, were deposited on the same day and thus created offsetting

bank debits and credits. This was the procedure followed in the cases of all other stockholders of the Corporation.

7. There was testimony that no stockholder of the Corporation was required to take stock in the Insurance Company but might, at his or her option, decline and retain and use the check given on December 31. It was, also, testified that, had any stockholder so elected, the Corporation could easily have sold the stock so declined by a stockholder or could have borrowed funds and thus obtained the funds necessary to pay the check previously given in distribution on December 31. I attach little or no significance to this testimony; no stockholder of this family corporation elected to decline taking the Insurance Company stock and the original plan of distribution was in fact carried out.

8. The plaintiff herein is the owner of seven and one-seventh ($7\frac{1}{7}$) shares of the capital stock of the Corporation. She paid individually her proportionate tax on the income of the Corporation for 1959 and 1960. The Bureau found that the distribution made to the plaintiff by the Corporation under the circumstances previously detailed was in substance and in fact a distribution of property and not cash and accordingly did not qualify as a non-taxable distribution of previously taxed but undistributed income under Section 1.1375–4(b), Treasury Regulations on Income Tax (1954 Code; [4] it, therefore, assessed additional personal income taxes, with interest, against the plaintiff on this distribution in the amount of $9,862.47, which plaintiff has paid and now sues to recover as illegally assessed and collected.

## ISSUES INVOLVED

The defendant contends, as has been observed, that the result of the transactions between the Corporation and its stockholders—the distribution made to the individual stockholders—was a distribution of property and not of cash and could not qualify as a tax-free distribution of profits under Subcnapter "S", as interpreted in Treasury Regulation 1.1375–4, *supra*.

The plaintiff urges that the transactions did represent a distribution in cash but that, if it did not and is to be deemed a distribution of property, it is still entitled to qualification as a tax-free distribution under Subchapter "S" and the Regulation of the Treasury Department, to such extent as it requires a contrary result, is invalid.

## CONCLUSIONS OF LAW

■ In determining the incidence of taxation, the substance, not the form, of the transaction giving rise to a taxable claim, taken as a whole, is to be considered. Any other rule would create the situation envisaged in the comment in Commissioner of Internal Revenue v. Court Holding Co. (1945) 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981, that, "to permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

■ In viewing as a whole the transaction between the Corporation and its stockholders giving rise to this controversy, it is apparent that the first step occurred when the Corporation subscribed and had issued to it the capital stock of the Insurance Company in return for the transfer by the Corporation to the Insurance Company of certain real estate owned by the Corporation. The stock in the Insurance Company, it is conceded, had at the time a real value of $22.50 per share, based apparently on the real or true value of the assets acquired by it in return for its stock. The book or tax basis of the property transferred in pay-

4. This Regulation specifically provides that "a distribution of property other than money or a distribution in exchange for stock, or a constructive distribution under section 1373(b), is never a distribution of previously taxed income," and is to be assumed to be a distribution from the accumulated earnings account.

ment for such stock, taken as a whole, was approximately $17.77, stated in terms of value per share of Insurance Company stock. To the extent of the difference between the book value or tax basis of property transferred (i. e., $17.-77 per share) and the real or market value of the Insurance Company stock thereby purchased, the Corporation realized a profit but, by the terms of Section 351, 26 U.S.C., such profit did not represent a taxable gain. However, the cost of the stock purchased, for tax purposes, would be the tax basis in the hands of the Corporation—transferror of the property conveyed in payment for such stock (i. e., $17.77 per share). Bloch v. United States (D.C.Texas 1966) 261 F.Supp. 597, 609, aff. 5 Cir., 386 F.2d 839.

■ The Corporation sought, however, to give a tax basis to the stock it intended to distribute among its stockholders of the real or market value of such stock. With this in mind, the Corporation did not execute a single stock subscription. It executed, as has been noted, two subscriptions. The reason is apparent. The Corporation desired to pass on to its own stockholders, free of any tax, a certain portion of the stock in the Insurance Company; and to do this, it wished to fix a *tax basis* for the stock so distributed equal to the *real or market value* of such stock (i. e., $22.50 per share). The number of shares of Insurance Company stock to be distributed among stockholders calculated at $22.50 per share, was determined by the amount of the Corporation's previously taxed but undistributed profits. Accordingly, the Corporation executed one stock subscription for 10,866 shares, which, taking a value of $22.50 per share, equalled roughly the amount of the Corporation's previously taxed but undistributed profits, and transferred to the Insurance Company in payment therefor property with a tax basis on the books of the Corporation which, divided among the shares subscribed for, was roughly $22.50 per share. This subscription covered stock the Corporation intended to distribute proportionately among its stockholders. However, its second subscription was to be paid for by a transfer of property having no tax basis; and the stock acquired under this subscription was to be retained by the Corporation.

It is obvious that this attempt by the Corporation to create different tax bases for the stock acquired by it in the Insurance Company cannot be sustained. The Corporation was making simultaneous transfers to the Insurance Company for Insurance Company stock. Its subscription must be viewed and valued as a whole; and each share of stock subscribed for acquired and must be given a like tax basis. Accordingly, the Corporation took its stock in the Insurance Company with a tax basis of $17.77 per share.

The Corporation distributed the Insurance Company stock, taken from its subscription for 10,866 shares, proportionately, among its stockholders. It did this ostensibly in the form of a sale of such stock at what it claimed was the true tax basis of such stock (i. e., $22.-50 per share), thereby creating no profit for the Corporation. As I have observed, the amount of stock sold to each stockholder, taken at a value of $22.50 per share, represented roughly his or her share of the previously taxed and undistributed profits of the Corporation. And each stockholder obtained the funds to pay for his or her purchase by a purported cash distribution of the previously taxed but undistributed profits of the Corporation proportionately among its stockholders. The cash distribution and the sale of stock amounted in reality merely to an exchange of checks, carried out within the family of the Corporation. Carried one step farther, what was done amounted to a distribution by the Corporation of stock in the Insurance Company proportionately among its stockholders.

But whether a sale or a distribution of stock, the result, tax-wise, for the stockholders of the Corporation would not be different. If it were a sale, the Corporation would have realized a profit

to the extent of the difference between the tax base for the stock sold and the sale price, that is, the difference between $17.77 and $22.50; and, by the terms of Subchapter "S", the stockholders, including the plaintiff, would have individually been taxed for the profit thus realized by the Corporation on the stock purchased by them. On the other hand, if the transaction be considered a distribution of property, the property so distributed could be credited against previously taxed but undistributed profits of the Corporation only to the extent of the stock's tax basis.[5] To hold otherwise and to permit the Corporation to distribute its profit on the difference between the stock's tax basis and its market value without tax would mean that the Corporation was being allowed to distribute without tax profits of the Corporation which had not theretofore been taxed. Such result would violate both the letter and the purpose of Subchapter "S".

The defendant contends, however, that the transaction between the Corporation and its stockholders was in fact a distribution of property and, as such, it could not qualify, in part or in whole, as a non-taxable distribution of previously taxed but undistributed profits of a corporation qualified under Subchapter "S". It argues that only a distribution of money, as distinguished from property, is entitled to relief from double taxation under the provisions of Section 1375(d) (1). Authority for such contention is not found in the statute itself. It is true that, in Section 1375(f) the non-taxable distribution authorized is referred to as a "distribution of money", but this must be considered along with other provisions of the same section wherein the non-taxable distribution is described in terms of "a distribution of property out of earnings and profits of the taxable year as specified in section 316(a) (2)". See Sections 1375 (a) (1) and (b). Certainly, Section 316, 26 U.S.C., to which the statute points for clarification of the type of distribution

qualifying under Section 1375, does not support the argument of the defendant. Under that Section, a distribution may qualify, whether it be in money or *in property*. Edmister v. C.I.R. (6 Cir., 1968) 391 F.2d 584, 585.

■ The defendant rests its claim on Treasury Regulation 1.1375–4(b), issued under Section 1375, which declares that a distribution of property is never a distribution of previously taxed income within the intendment of Subchapter "S". It must be conceded that, while a regulation such as that here, insofar as it is consistent with the statute itself, has the force and effect of law, it may not impose or add conditions or qualifications not imposed by Congress or within the Congressional purpose, unless such qualification or condition is necessary to make effective the statutory intent. A. & N. Furniture & Appliance Company v. United States, *supra,* 271 F.Supp. at p. 47 (finding a part of the very Regulation on which defendant relies invalid); Gamman v. Commissioner of Internal Revenue (1966) 46 T.C. 1, 6–7 (finding impermissible another regulation issued under Subchapter "S"). The justification urged by the defendant in support of the Regulation is that, a distribution of property, rather than of cash, under Section 1375 would enable the distributee-stockholder to acquire a higher basis for the property so distributed than its tax basis on the books of the distributing Corporation and thereby escape tax on such accretion of market value over tax base. This follows, it asserts, because, in the hands of the distributee, its tax basis would become market value.

This argument would be persuasive if the result envisaged by the defendant followed. Such is not, however, the result. Under Subchapter "S", *only previously taxed* income qualifies for exemption from dual taxation. On the excess of market value over book value or tax basis of the stock distributed, no tax has been paid and *such excess cannot pass to the distributee-stockholder as previ-*

5. Cf. Roe v. Commissioner of Internal Revenue (5 Cir., 1951) 192 F.2d 398, 401.

*ously taxed profit.* But that is no reason why the tax basis of such stock, to the extent of previously taxed but undistributed profits of the Corporation, should not be permitted to pass, undiminished by the imposition of a second tax, to the stockholder-distributee. This is what would have resulted, if the Corporation had sold the stock at market price and distributed proportionately the proceeds among its stockholders.

It is accordingly clear that the Regulation (on which the defendant relies) is not necessary to accomplish its suggested purpose of preventing the excess or market value over tax base of the property transferred from escaping taxation. Moreover, the Regulation violates the intent and purpose of Subchapter "S", which was intended to avoid the very dual taxation which the defendant seeks to secure; and elevates form over substance. See Fulk & Needham, Inc. v. United States, *supra,* 411 F.2d at p. 1407, note 4.

To sum up, I am of opinion that the plaintiff is taxable to the extent of the difference between $17.77 and $22.50 on each share of stock acquired by her on the distribution in question but that the collection of any other tax herein was improper. The parties may submit an appropriate judgment in keeping with this conclusion.

And it is so ordered.

## AMENDED FINDING OF FACT

The defendant has moved for a new trial herein. In particular, it indicates that the finding by the Court of the amount of previously taxed and undistributed income of the Corporation was $212,868.64, as of the end of the calendar year 1960, is erroneous. Such finding was based on a statement in brief of the defendant itself. As the defendant demonstrates in its present brief, however, it was manifestly mistaken in its calculation of the previously taxed and undistributed income. The actual amount of previously taxed but undistributed income of the Corporation, as of the end of the year 1960, was $128,067.54. The Findings of Fact herein are amended accordingly. To the extent of that amount only, the distribution in question constitutes a non-taxable distribution of previously taxed income This sum (i. e., $128,067.54), expressed in terms of the distribution of the Insurance Company stock (9,462 shares) [6] translates into $13,535 per share. To that extent, the distribution of Insurance Company stock represented a distribution of previously taxed but undistributed income and is free of tax in the hands of the Corporation's stockholders such as plaintiff. However, the difference between that amount and the agreed value of the Insurance Company stock acquired by the plaintiff and other stockholders (i. e., $22.50–$13,535) is taxable as dividend income.

Except as modified above, the original Findings of Fact and Conclusions of Law are re-affirmed.

And it is so ordered.

---

6. This sum is the total number of the shares of stock which were distributed during the period in question.