**W & W FERTILIZER CORPORATION**

v.

**The UNITED STATES.**

No. 17–74.

United States Court of Claims.

Dec. 17, 1975.

[9] *See* note 8 *supra.*

Sherwin P. Simmons, Tampa, Fla., atty. of record, for plaintiff; Harold W. Mullis, Jr., Ronald S. Nauveen and Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., of counsel.

Charles E. Auslander, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and BENNETT, Judge.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

LARAMORE, Senior Judge:

This is an action to recover Federal corporate income taxes paid by plaintiff, under protest, for the taxable year ended March 31, 1970. The sole question presented is whether the taxpayer's prior election to be treated as a "small business corporation" under Subchapter S of the Internal Revenue Code of 1954,[1] terminated when one of its shareholders transferred his stock to a revocable *inter vivos* trust.[2]

The relevant facts are as follows: Plaintiff, W&W Fertilizer Corporation (hereinafter referred to as "W&W" or as "taxpayer"), was incorporated under the laws of the State of Florida in 1907. In 1965 the company elected to be treated as a Subchapter S corporation, effective for its taxable year ended March 31, 1966, and subsequent years unless terminated. Immediately prior to February 25, 1970 (the date of the transfer to the trust), W&W had only two shareholders: Lemuel P. Woods, owning 47 percent of the company's stock, and Fred J. Woods, his brother owning 53 percent. On the above date, Lemuel established the Lemuel P. Woods Revocable Trust (hereinafter referred to as the "Woods Trust") pursuant to a revocable trust agreement. Among the assets transferred to the trust on that date were all of the shares of W&W stock owned by Lemuel.

The Woods Trust was a revocable *inter vivos* or living trust, all of the income of which was taxable to and reported for Federal income tax purposes by Lemuel. As the grantor, Lemuel had reserved in himself the right to revoke at any time and to revest title to the trust's assets in himself, with the provision, however, that such right be exercised only in writing and after 90 days' notice to the trustee.[3] A bank was designated as co-trustee, along with Julia Woods, Lemuel's wife. Lemuel was sole income beneficiary for life, and at the time of the trust's inception, the remain-

---

1. All citations to sections hereinafter are, unless otherwise indicated, in reference to the Internal Revenue Code of 1954.

2. Subchapter S (26 U.S.C. §§ 1371–1379), relieves an electing "small business corporation" of Federal corporate income tax liability (other than the tax imposed on certain capital gains by section 1378) for the period during which such election remains effective.

3. Article eleven of the revocable trust agreement provided as follows: "Trustor reserves the right during his lifetime to alter, amend, modify or revoke this trust, or to withdraw assets from the trust estate or to require changes in the investments of the trust estate, and this right may be exercised at any time and from time to time by any instrument in writing signed by Trustor; provided, however, that Trustee may, at its option, require that it be given written notice at least ninety days prior to the effective date of any proposed alteration, amendment, modification or revocation of this trust or withdrawal of assets from the trust estate."

der was variously divided among his wife and family.

Section 1372(e)(3)[4] of the Code provides that a Subchapter S election is terminated at such time as a corporation ceases to be a "small business corporation" as defined in section 1371(a).[5] Subsection 2 of section 1371(a) specifies that a small business corporation may not "have as a shareholder a person (other than an estate) who is not an individual."

In light of sections 1371(a)(2) and 1372(e)(3), it is understandably not disputed that if during the taxable year ended March 31, 1970 taxpayer had as a shareholder a person who was not an individual, its Subchapter S election terminated. Both parties agree that a trust is not an individual within the meaning of section 1371(a)(2), and is, therefore, prohibited from becoming a Subchapter S shareholder. Hence, the resolution of this case turns on whether the revocable *inter vivos* trust described herein is to be accorded recognition for Federal tax purposes as a shareholder in taxpayer or, instead, whether the grantor-beneficiary is to be so recognized and the trust disregarded.

The government contends that when Lemuel transferred his shares to the Woods Trust, taxpayer's Subchapter S election terminated because, having a trust as a shareholder, it ceased to be a qualified "small business corporation" within the meaning of section 1371(a). Taxpayer, however, urges that "small business corporation" status continued even after the transfer because the Woods Trust should be disregarded, and Lemuel, the grantor, still accorded status as the owner.

In support of this, taxpayer makes three basic contentions. The first is that it is appropriate in this case to apply the well-settled rule that substance must govern over form. It is urged that because Lemuel retained *de facto* and *de jure* control over the trust *res,* in substance he, not the trust, must be regarded as the owner of the trust property. The second argument is that Lemuel never surrendered the beneficial interest in his W&W shares, and it is this interest that should control for purposes of deciding whether he remained the shareholder within the contemplation of section 1371(a)(2). Finally, taxpayer urges that uniform application of certain Federal tax principles compel recognition of the grantor as the "tax" owner of the shares nominally held by the Woods Trust. Paramount among these principles is what is termed the "grantor trust rules," embodied in the Internal Revenue Code, which hold that a grantor of a trust who retains either administrative control, a reversionary interest, power to control beneficial enjoyment, or the power of revocation, will be taxed on the income derived from the assets of the trust. (Section 671 *et seq.*)

For reasons which follow, we reject all three points and hold instead that taxpayer's Subchapter S election terminated upon the transfer of the shares in question into the hands and ownership of the Woods Trust.

---

**4.** "Sec. 1372. *Election by Small Business Corporation.* * * * (e) *Termination* * * *. (3) *Ceases to be small business corporation.* —An election under subsection (a) made by a small business corporation shall terminate if at any time—(A) after the first day of the first taxable year of the corporation for which the election is effective, if such election is made on or before such first day, or (B) after the day on which the election is made, if such election is made after such first day, the corporation ceases to be a small business corporation (as defined in section 1371(a)). Such termination shall be effective for the taxable year of the corporation in which the corporation ceases to be a small business corporation and for all succeeding taxable years of the corporation."

**5.** "Sec. 1371. *Definitions.* (a) *Small Business Corporation.*—For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—(1) have more than 10 shareholders; (2) have as a shareholder a person (other than an estate) who is not an individual; (3) have a nonresident alien as a shareholder; and (4) have more than one class of stock."

## I.

In its first contention, taxpayer cautions us against the exaltation of form over substance by reminding of the fact that Lemuel, as grantor of the trust, retained a quantum of economic control over the trust *res* by retaining the power to revoke. This power, along with his ability to influence the trustees' administrative decisions, is said, in economic substance, to make him the owner of the shares of taxpayer held by the Woods Trust.[6]

However, one of the persistent problems of income taxation, as of other branches of the law, is the extent to which legal consequences should turn on the economic substance of a transaction rather than on its form. It is easy to say that substance should control, but in practice form usually has some substantive consequence, so that if two transactions differ in form, they will probably not be identical as to substance. Congressional enactments of tax law often take note of this. To determine where the true substance of a particular enactment lies requires an inquiry into the reason for the passage of the law.

Subchapter S was enacted to afford a qualified "small business corporation" the option of eliminating Federal income tax at the corporate level, thereby avoiding double taxation. S.Rep.No.1983, 85th Cong., 2d Sess. 87 (1958), (1958–3 Cum.Bull. 922, 1008). If a corporation qualifies, it pays no tax and its income is "passed through" to its shareholders. An examination of the legislative history of the Act reveals that Congress' motive for including qualification requirements was to insure both the efficacy of the law's remedial purpose and the avoidance of an extreme administrative burden otherwise falling on the government

in applying the law. Congress, therefore, expressly incorporated a requirement of form into the Act by excepting certain types of business organization from the ambit of the law's effect.

■ More specifically, section 1371(a) (2) was intended to effectuate two congressional objectives. *Fulk & Needham, Inc. v. United States*, 411 F.2d 1403 (4th Cir. 1969). First, it was designed to make the same tax treatment previously only available to proprietorships and partnerships also available to those small corporate business structures economically similar to proprietorships and partnerships. However, the similarity to partnerships and proprietorships was not complete under the congressional scheme. While partnership earnings may quite properly be passed through any type of business organization entitled by law to participate in a partnership, Congress expressly limited the availability of the special similar tax treatment to certain specified forms of business organization. The existence of a trust as a shareholder in a Subchapter S corporation would complicate the structure by adding another entity through which earnings would of necessity be passed. Congress anticipated this type of circumvention of the Act's objective by specifying qualification requirements of form for Subchapter S corporation shareholders.

The second, and equally compelling, reason for the adoption of the qualification requirement of section 1371(a)(2), was to avoid placing an enormous administrative burden on the government of tracing earnings to, and possibly through, a widely diversified and multitiered group of shareholders. If the Internal Revenue Service were required to verify and monitor the identity of owners of artificial entities, themselves the owners of Subchapter S shares, the task

---

**6.** While we reject taxpayer's first contention for other reasons set out below, we do note that Lemuel's economic control over the trust property was not plenary. Under the terms of the trust agreement the trustee could, at its

option, require 90 days' written notice prior to the effective date of any proposed exercise of control by the grantor-beneficiary. See n. 3, *supra.*

would be monumental.[7] Such a possibility was obviated by specifically prohibiting persons "other than individuals" from owning Subchapter S stock.

In light of these two objectives, the impact of the qualification requirements upon the question of form and substance presented in this case was made abundantly clear in the Senate Committee Report, S.Rep.No.1983, 85th Cong., 2d Sess. 217–218 (1958), (1958–3 Cum.Bull. 922, 1138–1139):

> Under section 1372(e)(3), an election terminates if the corporation ceases to be a small-business corporation. Thus, if an eleventh person or a nonresident alien becomes a shareholder in the corporation, *if a corporation, partnership, or trust becomes a shareholder,* or if another class of stock is issued by the corporation, *the election is terminated.* [Emphasis supplied.]

■ In our view, the above language spells clearly that the organizational form of the would-be shareholder constitutes the substance which must be examined when applying the qualification requirement contained in section 1371 (a)(2).

The United States Court of Appeals, Fourth Circuit, has twice decided this same issue as applied to testamentary trusts. *Fulk & Needham, Inc. v. United States, supra; Old Virginia Brick Co. v. Commissioner of Internal Revenue,* 367 F.2d 276 (4th Cir. 1966). In *Fulk,*[8] the taxpayer contended that the trust should be disregarded as lacking economic reality, because even if a trust existed under state law, it was not a trust in substance which should be recognized for purposes of Federal income taxation. It was further argued that since the beneficiary-trustee had been taxed on all income to the trust and treated the assets as her own, she, and not the trust, was the true "owner" of the shares. The court rejected this argument, stating at page 1406:

> The formula employed by Congress in § 1371(a)(2) in defining a small business corporation entitled to the benefits of subchapter S, speaks of a domestic corporation which does not have as a shareholder "a person (other than an estate) who is not an individual." By necessary implication a corporation in which a trust is a shareholder does not qualify.

■ The language of the Fourth Circuit quoted above is equally applicable to and determinative of the issue now before us. Lemuel chose to employ a revocable *inter vivos* trust in connection with his estate plan and the Woods Trust clearly has substance. Tax law simply does not permit a taxpayer to embrace such a device for one purpose and yet ignore it for tax purposes. *Cf. Commissioner of Internal Revenue v. Danielson,* 378 F.2d 771 (3d Cir. 1967), *cert. denied,* 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967); *Dietzsch v. United States,* 498 F.2d 1344, 204 Ct.Cl. 535 (1974). Indeed, the discovery by Lemuel that his chosen estate plan had an adverse effect on the tax status of his corporation appears to be precisely what the Supreme Court had in mind when, in *Commissioner of*

---

7. For example, in 1970 over 250,000 corporations existed that had elected to be treated as Subchapter S corporations. Statistics of Income, 1970, Corporation Income Tax Returns, Treasury Department Publication 16, p. 1. If the Internal Revenue Service had to verify how many beneficiaries there were who, by disregarding their trust, were to be treated as shareholders, and to identify who the taxpayers actually were, such a procedure would amount to a very great burden. Further, tax planners could structure multitiered setups (for legitimate tax purposes) wherein it might be impossible to trace income and to identify taxpayers.

8. A partner in a construction firm died and his share passed to a simple trust which was to pay the income to his wife for life, the trust to cease on her death and the corpus to pass to his daughters. After the testator's death, the partnership was incorporated and a portion of the shares of the new corporation were issued to the "Trustees of The A. P. Fulk Estate." The next year the estate was closed and the widow and daughters took the shares as co-trustees. Subsequently, the corporation filed an election for Subchapter S status which was determined to be invalid by the Internal Revenue Service.

*Internal Revenue v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 94 S.Ct. 2129, at page 2137, 40 L.Ed.2d 717 (1974), it stated, at page 149:

> * * * while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having does so, he must accept the tax consequences of his choice, whether contemplated or not, * * * [citations omitted] and may not enjoy the benefit of some other route he might have chosen to follow but did not.

Additionally, taxpayer's argument that the trust should be disregarded ignores the apparent principal purpose of its creation.[9] Lemuel had the right to income on taxpayer's stock prior to creating the trust, but the property would have been subject to probate and the possible delays and expenses attendant thereto. By creation of the trust, Lemuel retained the income from the stock (as before), but he created a new estate plan which would have considerable new consequences under Florida law upon his death. As well as asking us to ignore the testamentary consequences which follow from creation of the trust, taxpayer would have us ignore the fact that the trust took title to Lemuel's real property and securities, it paid his taxes, it made investments, it delivered title to securities and real property, and provided financing for at least one of his businesses.

The Supreme Court has rejected the proposition that a form of business organization once selected and employed for non-tax reasons may later be disregarded at tax time. *National Carbide Corp. v. Commissioner of Internal Revenue,* 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949); *Moline Properties, Inc. v. Commissioner of Internal Revenue,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). This court has followed the tenor of these decisions. *Harrison Property Management Co., Inc. v. United States,* 475 F.2d 623, 201 Ct.Cl. 77 (1973), *cert. denied,* 414 U.S. 1130, 94 S.Ct. 868, 38 L.Ed.2d 754 (1974); *Carver v. United States,* 412 F.2d 233, 188 Ct.Cl. 202 (1969). The principles applied in these cases apply here as well. Whatever the reasons for creating the Woods Trust, it is a fact that the Woods Trust conducted business. Thus, having chosen to operate in this fashion, having enjoyed the advantages of this arrangement, neither Lemuel nor taxpayer can now avoid the tax consequences of Lemuel's choice and the separate identity of the Woods Trust. *Cf. Love v. United states,* 96 F.Supp. 919, 119 Ct.Cl. 384 (1951).

## II.

Taxpayer's second argument in support of its claim is that for purposes of determining who the shareholders are under the provisions of Subchapter S, beneficial ownership rather than legal title controls. Much is made of the cases and Revenue Ruling which look to beneficial ownership of Subchapter S stock in determining which party or parties are required to file the "consent" to election required by section 1372(a).[10] *William B. Wilson,* 34 T.C.M. 463 (1975); *Kean v. Commissioner of Internal Revenue,* 469 F.2d 1183 (9th Cir. 1972); *Alfred N. Hoffman,* 47 T.C. 218 (1966), *aff'd sub nom. Hoffman v. Commissioner of Internal Revenue,* 391 F.2d 930 (5th Cir. 1968); Rev.Rul. 70–615, 1970–2 Cum. Bull. 169. However, these authorities deal with stock held by one as a nominee of another, rather than in trust as in the instant case.

The Treasury Regulations under Subchapter S recognize that under some circumstances the "record-owner" cannot be treated as an owner for Subchapter S purposes because he is not the real party

---

9. We can only speculate as to the reason for creating the trust. The possibilities include facilitating the transfer of the title to the assets on Lemuel's death, avoiding probate and the expenses attendant thereto, and providing for management if Lemuel became incompetent.

10. Section 1372(a) provides that an election is valid only if all persons who are shareholders in an electing corporation consent to the election at a specified time.

in interest. Treasury Regulations, section 1.1371–1(d)(1) provides in part that:

> * * * Persons for whom a [sic] stock in a corporation is held by a nominee, agent, guardian, or custodian will generally be considered shareholders of the corporation.

This regulation quite correctly reflects that Congress did not intend to impose an individual income tax on the owners of shares of Subchapter S corporations without their consent. To have done so would have directly contravened the enactment's policy of elective tax treatment. Nor did Congress intend to vest in nominees, guardians, agents or custodians the power to defeat an election by withholding their consent. See Treasury Regulation, section 1.1371–1(d)(1).

■ But, from this we cannot deduce that a trust can either qualify as a shareholder under section 1371(a) or be disregarded as the shareholder, because trusts, unlike nominees, guardians, agents and custodians, are recognized for tax reporting purposes. This is significant because we believe section 1371(a) addresses only entities recognized as taxpayers by the Code. Nominees, guardians, agents and custodians are not recognized as taxable entities and, hence, cases cited by taxpayer in which courts have ignored them and looked instead to the real parties in interest for Subchapter S consent purposes, are inapposite to the case at bar where we deal with a trust. Notwithstanding the provisions of the Code which define, modify and even eliminate a trust's obligation to pay taxes, the trust does remain a taxable entity of the kind addressed in section 1371(a) and cannot be ignored for qualification purposes by looking through it to the beneficiaries.[11]

### III.

■ Taxpayer's third contention is that because Lemuel, as grantor of the Woods Trust, is taxed on the trust income under the "grantor trust rules" of section 671 et seq., the trust should be ignored. The argument is that it would be inconsistent not to consider him the owner of the shares for Subchapter S eligibility purposes and yet tax him as their "owner" on the income they produce. Taxpayer, however, misconceives the manner in which the "grantor trust rules" operate. They do not, as taxpayer urges, recognize the grantor as the legal "owner" of the property placed in trust. On the contrary, the rules arose under the Code because it was recognized by Congress that taxation of income is not concerned so much with refinements of title as it is with actual command over the property taxed. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930). The "grantor trust rules" treat the grantor as if he were the owner in cases where he has reserved to himself some of the powers normally attendant

---

11. We note here that in *A. & N. Furniture & Appliance Co. v. United States*, 271 F.Supp. 40 (S.D.Ohio 1967), a District Court held that subjecting shares of stock to a voting trust agreement did not terminate a Subchapter S election. This decision is not inconsistent with our position here. In that case a proprietor formed a corporation with the shares being issued to himself and his family members. The corporation filed a valid election for Subchapter S status. Subsequently, all the shareholders subjected their stock to a voting trust agreement with the father as trustee for the stated purpose of insuring continuity and stability of policy and management. The court found that under state law the creation of the voting trust gave the trustee no interest in the shares subject to the trust, nor did it give him the power to transfer ownership of the stock by sale or otherwise. It gave him merely the power to vote the shares. Indeed, the stock transfer records of the company still showed the individual family members as the owners of the stock. In essence, the court held that the "voting trust" was not truly a trust, but was more in the nature of an irrevocable proxy; it was not ownership of the shares of stock which was involved, it was merely voting rights which were affected.

The same result was reached in *Lafayette Distributors, Inc. v. United States*, 397 F.Supp. 719 (W.D.La.1975), the reasoning of which, in part, we today reject insofar as it might suggest, inter alia, the appropriateness of the "beneficial owner test" in determining who the shareholder is for purposes of section 1371(a)(2).

to outright ownership. Thus, their design is to expand the coverage of the taxing statute. On the other hand, Subchapter S was enacted as a remedial measure to relieve qualifying small business corporations of a tax otherwise payable. Section 1371(a)(2) limits the benefits of the Act to corporations whose stock is owned solely by individuals or estates. Where such a deliberately specific qualification is imposed, we must strictly apply it lest the narrow benefit intended by Congress be unduly broadened. Hence, the "grantor trust rules," with the very purpose of expansion, and the qualification requirements of section 1371(a), with their restrictive purpose, are not analogous, and their comparison is not supportive of the taxpayer in this case.

Moreover, in making an argument based upon the applicability of the "grantor trust rules" taxpayer, in effect, concedes the existence and recognition of the Woods Trust for tax purposes because the rules themselves address taxation of trust income. If there were no trust for tax purposes, the rules would not apply. The applicability herein of the "grantor trust rules" embodied in section 671 *et seq.*, therefore, reinforces, rather than refutes, the argument that the Woods Trust must be recognized as the owner of taxpayer's stock.

## IV.

Finally, the government relies on Treasury Regulations, section 1.1371–1(e) and section 1.1372–4(b)(3), which provide:

§ 1.1371–1 *Definition of small business corporation.*

\* \* \* \* \* \*

(e) *Shareholders must be individuals or estates.* A corporation in which any shareholders is a corporation, trust, or partnership does not qualify as a small business corporation. The word "trust" as used in this paragraph includes all trusts subject to the provisions of subchapter D, F, H, or J (including subpart E thereof), chapter 1 of the Code and voting trusts. Thus, even though the grantor is treated as the owner of all or any part of a trust, the corporation in which such trust is a shareholder does not meet the qualifications of a small business corporation.

§ 1.1372–4 *Termination of election.*

\* \* \* \* \* \*

(b) *Methods of Termination.*

\* \* \* \* \* \*

(3) *Ceases to be small business corporation.* An election under section 1372(a) terminates if at any time after the first day of the first taxable year of the corporation for which the election is effective, or after the day on which the election is made (if such day is later than the first day of the taxable year), the corporation ceases to be a small business corporation as defined in section 1371(a). Thus, the election is terminated if an eleventh person, a non-resident alien, or a trust, partnership, or corporation becomes a shareholder, or if another class of stock is issued by the corporation. \* \* \*

In *Lykes Bros. Steamship Co., Inc. v. United States,* 513 F.2d 1342, 1350, 206 Ct.Cl. 354, 369 (1975), and *Birchenough v. United States,* 410 F.2d 1247, 1252, 187 Ct.Cl. 702, 710 (1969), we cited *Commissioner of Internal Revenue v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948), wherein the Supreme Court stated that it had:

\* \* \* many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. *See, e. g., Fawcus Machine Co. v. United States,* 282 U.S. 375, 378 [51 S.Ct. 144, 145, 75 L.Ed. 397 (1931)].

■ In light of what we have said in parts I, II and III of this opinion, it is

our view that the above regulations correctly interpret Code section 1371(a)(2) to the extent that it prohibits an *inter vivos* revocable trust, such as the Woods Trust, from becoming a shareholder in a Subchapter S "small business corporation." In fact, section 1.1372–4(b)(3) precisely tracks the language of the Senate Committee Report on Subchapter S, quoted earlier, in stating "[t]hus, the election is terminated if * * * a trust becomes a shareholder * * *."

For the foregoing reasons, we are of the opinion that taxpayer is not entitled to recover. Therefore, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The petition is dismissed.