Carlos and Emma BLANCO

v.

The UNITED STATES.

No. 531–77.

United States Court of Claims.

July 18, 1979.

---

15. See note 14, *supra*.

Towner Leeper, El Paso, Tex., for plaintiffs.

Donald H. Olson, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and SMITH, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

This case, now before the court on cross-motions for summary judgment, involves a voluntary attempt by the plaintiffs to undo a completed transaction within the same taxable year in order to avoid the originally unforeseen tax consequences of that transaction. For the reasons discussed below, we conclude that the plaintiffs' endeavors must fail.

## I.

In 1970, the plaintiffs, Carlos and Emma Blanco,[1] owned 99 percent of the shares of Carlos Blanco, Inc., a construction and general contracting corporation. On July 31, 1970, Carlos Blanco surrendered to the corporation 2,281 shares of the corporation's common stock he owned, which the corporation subsequently held as treasury stock. In return, the corporation distributed to Carlos Blanco (1) shares of stock in a bank valued at $36,150, which had been purchased with corporate funds and which

Blanco considered to be corporate assets, but which had been issued in Blanco's name, allegedly to allow for greater ease of transfer, and (2) corporate interests in other ventures. In addition, the corporation paid personal obligations of Carlos Blanco, cancelled an indebtedness of Blanco to the corporation, and purchased additional bank shares for him. The total value of the corporate property distributed to Carlos Blanco and the other benefits the corporation provided for him was $65,200.

Carlos Blanco and his accountant both stated in their depositions that the purpose of the July 31 transaction was to distribute corporate assets to Mr. Blanco. The accountant testified that there was no tax motive for the transaction. According to Carlos Blanco, he entered into the transaction because (1) there were several corporate assets already held in his name, (2) the assets served no corporate purpose except as investments, and (3) his accountant suggested that he "either change them over to the lawful owner, to the corporation, or buy them from the corporation." Mr. Blanco stated, "At that time I didn't have the money, so [the accountant] suggested that we sell some of our stock back to the corporation." The redemption had no significant effect upon the taxpayer's ownership interest in the corporation.

After this transaction was completed, the taxpayer's accountant learned that under established legal principles, the proceeds that Carlos Blanco had received and the other benefits the corporation had provided were taxable to him as a dividend pursuant to 26 U.S.C. § 301 et seq. The accountant recommended that Mr. Blanco issue to the corporation an interest-bearing note, in the principal amount of $65,200, and that the corporation return to him the previously redeemed shares in the corporation. Mr. Blanco and the corporation did so on September 15, 1970, prior to expiration of the taxable year in question.[2]

---

1. Emma Blanco is a party to this action only because she filed a joint income tax return with Mr. Blanco. References to "the taxpayer" are to Mr. Blanco.

2. The note provided that interest at the annual rate of 5½ percent was payable quarterly, and that the principal was due on or before 5 years from the date of the note. The taxpayer made

The accountant testified in his deposition that the purpose of the second transaction was "to reverse the unfavorable tax affect [sic] of what was done on July 31, 1970." When asked whether there was any other reason for entering into the September 15 transaction, the accountant said that there was none. Before so stating, however, the accountant had suggested an additional reason for choosing the particular form of the September 15 transaction. The accountant stated that (1) the corporation was seeking bonding in order to enter the field of commercial construction, (2) the bonding company would not accept, as a corporate asset for bonding purposes, the corporation's interest in a joint venture valued at $17,318.98, (3) the joint venture interest, part of the assets distributed on July 31, would be among the assets returned to the corporation if the distribution were fully rescinded, and (4) the bonding company would accept as a corporate asset Carlos Blanco's personal note. The accountant indicated that the taxpayer issued a promissory note in the second transaction, rather than simply returning the previously distributed assets, in part because his note for the full amount would be more useful for bonding purposes to the extent that it would cover the value of the joint venture interest. The accountant further testified:

Q. . . . [W]as [bonding] part of your overall motivation in entering into the September 15 transaction or was this some element that came up after the September 15 transaction was decided on. Do you recall now, sir?

A. Not right off hand. I am sure it was one part of, you know, that that had something to do with it.

Q. Right. But the main element in the September 15, 1970 transaction was to reverse the unfavorable tax consequences that may have arisen from the July 31 transaction. Is that correct, sir?

A. Yes, sir.

the requisite interest payments and several principal payments during the term of the note, and generally treated the note as a binding obligation to the corporation. Principal and

The accountant also stated that he considered the July 31 transaction a "proper" one, except that it would have resulted in unfavorable tax consequences.

In discussing the reason for the second transaction, Carlos Blanco, who relied upon his accountant's advice in tax matters, stated in his deposition: "I don't remember the reason that he gave us, but he said we did it wrong . . . . I would assume that it would be for tax reasons, because it was, as far as we were concerned, it was a legal transaction . . . ." Mr. Blanco later stated that the accountant "mentioned the fact that it might have some tax affect [sic] . . . . So we reversed the transaction then." The taxpayer agreed that what he hoped to accomplish by the second transaction was to "retain [his] ownership of the assets that had been transferred . . . but to do it in the form of a purchase transaction . . . ." The taxpayer stated that in considering whether to reverse the transaction by returning the assets or by issuing a promissory note, he was "thinking about having a clean financial statement for bonding purposes."

The Internal Revenue Service (1) determined that the July 31 distribution of corporate assets was taxable as a dividend, and (2) disallowed deductions taken by the taxpayer for payments on the promissory note, on the ground that they were voluntary capital contributions. The taxpayer challenges these determinations on the grounds that the July 31 transaction was rescinded on September 15, 1970, and, alternatively, that the two transactions should be treated as a single, nontaxable sale of corporate assets in return for the taxpayer's note. For the reasons discussed below, we conclude that (1) the taxpayer in fact did not rescind the earlier transaction, (2) the two transactions were separate and distinct and should not be combined, and (3) payments on the note were nondeductible, voluntary contributions to the capital of the corporation.

interest on the note were paid in full on August 2, 1976. The taxpayer deducted payments on the note as ordinary business expenses.

## II.

■ The facts of this case do not support the taxpayer's claim that he rescinded the July 31 transaction. In a rescission, the parties are restored to their respective positions prior to the transaction. That was not done in this case.

Prior to July 31, 1970, the corporation owned the assets it distributed to Blanco, and Blanco was not indebted to the corporation for $65,200. After September 15, 1970, Blanco was indebted to the corporation for that amount, as reflected in his promissory note, and Blanco rather than the corporation owned the bank stock and other distributed assets the corporation previously had owned. Thus, the second transaction did not restore the parties to the *status quo ante.* Instead, it put them in a different position, more favorable to Blanco, by attempting to change the form of but not rescind the prior transaction. As Carlos Blanco admitted, in the second transaction he sought to "retain [his] ownership of the assets that had been transferred . . . but to do it in the form of a purchase transaction . . . ."[3]

Since we hold that there was no rescission in this case, there is no occasion to consider whether or in what circumstances the parties to a completed transaction may rescind it in the same tax year, in order to escape the tax consequence of the transaction that initially had not been anticipated. Nothing in this opinion is intended to indicate any views on that issue.

## III.

■ Plaintiffs' alternative contention is that the two transactions should be combined and treated as if there had been only a single transaction by which the corporation sold assets to and provided other benefits for Carlos Blanco, in return for Blanco's

payment of $65,200. Asserting that under the tax laws substance must prevail over form, plaintiffs urge us to look at the net effect of the two transactions together rather than to consider them separately.

The courts have recognized that where a single business transaction is fragmented into two ostensibly separate steps which had no valid business purposes and which were taken to avoid taxes, the Commissioner may "collapse" two transactions into a single one and treat that entity as the taxable event. *See Gregory v. Helvering,* 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Weller v. Comm'r,* 270 F.2d 294, 296–97 (3d Cir. 1959); 3 Mertens, Law of Federal Income Taxation § 20.55. It is quite another matter, however, when a taxpayer who has completed a transaction seeks to "collapse" it with a second transaction to achieve the result he could have accomplished initially had he structured the transaction differently, especially where the two transactions had different purposes and the second transaction was effected primarily to avoid the unanticipated adverse tax consequence of the first transaction. In that situation the governing principle is that a taxpayer may not reopen and alter a transaction that was valid and complete for business purposes in order to obtain more favorable tax treatment, even though initially he could have cast the transaction in the altered mold. As the Supreme Court stated in *Comm'r v. Nat'l Alfalfa Dehydrating Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974) (citations omitted):

> This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, . . . and may not

**3.** *Meyer's Estate v. Comm'r,* 200 F.2d 592 (5th Cir. 1952), upon which plaintiff relies, is distinguishable. There the court permitted the taxpayer to withdraw a previous election to be taxed in a particular manner because the election was based upon a computational error. That case did not involve a true rescission, in which both parties are restored to the situation as it existed before a transaction; it involved unilateral action by the taxpayer to restore the legal situation that had existed before an election. Moreover, the taxpayer there completely undid a prior election, whereas here the taxpayer sought to retain the benefits of an earlier transaction and change only its form.

**328**

enjoy the benefit of some other route he might have chosen to follow but did not.

Neither the July 31 nor the September 15 transaction had as a purpose the sale of corporate assets to the taxpayer. The admitted purpose of the first transaction was to withdraw corporate assets from the corporation and to distribute them to the taxpayer without cost to him or to his wife. The plaintiffs concede that this kind of transaction is taxable as a dividend, and that the first transaction fully achieved .its goal. The taxpayer further conceded in his depositions that he voluntarily entered into the second transaction to avoid the unfavorable tax consequences of the first transaction.

Although in the second transaction the taxpayer issued a note in order to recast the first transaction as a sale of assets, the second transaction was not designed to accomplish a sale of assets. The sale was merely the means of achieving the admitted end of avoiding taxation.

Neither transaction had as a business purpose the net effect of the two transactions combined, *i. e.,* a sale of assets. In fact, their net effect was inconsistent with the purpose of the first transaction, and incidental to the purpose of the second. The axiom that substance should prevail over form does not justify collapsing the two transactions in this case because neither in substance nor in form did they constitute a sale. In substance, the first transaction was a dividend, and the second was an attempt by the taxpayer to reopen a completed transaction for a perceived tax advantage. This case thus illuminates our statement that "in practice form usually has some substantive consequence, so that if two transactions differ in form, they will probably not be identical as to substance." *W & W Fertilizer Corp. v. United States,* 527 F.2d 621, 624, 208 Ct.Cl. 443, 449 (1975), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

## IV.

▮ Finally, the plaintiffs contend that "taxpayer mistakenly receive[d] money un-

der a claim of right" and therefore is entitled to deductions for the repayments in subsequent years of any money "mistakenly" received. The claim of right, according to the plaintiffs, arose when the plaintiffs "legally obligated themselves to repay the money by issuing a fully secured, interest bearing, negotiable promissory note."

The plaintiffs' claim of right argument misses the point. As already noted, the taxpayer voluntarily and unilaterally assumed the legal obligation represented by the note. He did not issue the note to satisfy any legal obligation to the corporation; he did so voluntarily and in order to reduce his own tax liability. The plaintiffs are not entitled to deduct such voluntary payments, made only in their perceived self-interest, either under a claim of right or under any other theory. *Cf. Crellin's Estate v. Comm'r,* 203 F.2d 812 (9th Cir. 1953).

### CONCLUSION

The plaintiffs' motion for summary judgment is denied, the defendant's motion for summary judgment is granted, and the petition is dismissed.